## No. 12,938.

### BRATTON, MANAGER OF SAFETY *v.* DICE.

(27 P. [2d] 1028)

Decided December 11, 1933.

Mr. James D. Parriott, Mr. Frank L. Hays, for plaintiffs in error.

Mr. A. L. Betke, Mr. Felix L. O'Neill, for defendant in error.

Mr. James A. Marsh, amicus curiae.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Plaintiffs in error will be referred to as manager of safety and the commission, the defendant in error will be referred to as Dice.

Dice, as relator in the trial court, was at the time of the commencement of this suit a police officer in the classified service of the City and County of Denver. In 1919, he took and passed the civil service examination and was certified by the commission, served his probationary period and in 1923 was given first grade in the classified service. On November 8, 1930, he was suspended for three days and deprived of his salary for that period by the manager of safety for an alleged failure

to enforce traffic ordinances, such being termed by the manager of safety, a neglect of duty. This suspension was summary, without any charges being filed against him, without any notice of any proceeding, and without being afforded any opportunity to be heard or answer. This action, on the part of the manager of safety, was protested by Dice and he made an appeal to the civil service commission. The commission refused a hearing on the ground that they had no jurisdiction and Dice thereafter instituted this mandamus proceeding to vacate the order of suspension and to obtain his compensation which had been deducted.

Dice alleged that the suspension order as above described was illegal for the reason that it was in violation of the provisions of the charter of the City and County of Denver relating to such matters; that the rules and regulations of the civil service commission made by the commission under charter provisions do not provide for notice and hearing and for that reason same are invalid.

The manager of safety in the trial court admitted that no written charges had been filed or hearing given, and contended that the charter and rules do not require written charges or a hearing and that it is not necessary that the statutes or rules contain such provisions in order to be valid and constitutional. After hearing, the trial court entered the following judgment:

"It is the judgment of the Court that a peremptory writ of mandamus shall issue to L. E. Bratton, Manager of Safety and Excise of the City and County of Denver, and to Edgar McComb, W. W. Grant, Jr., and James W. Kelley, constituting and being members of the Civil Service Commission of the City and County of Denver, enjoining and directing them, and each of them, immediately after the receipt of said writ, to set aside said unlawful and wrongful suspension and deduction in pay of said Edward Dice from November 8, 1930, to November 10, 1930, inclusive, and to take such action as may

be necessary and within their authority to secure to said Edward Dice his pay and salary for said period; or, in the alternative, that L. E. Bratton, Manager of Safety and Excise of the City and County of Denver, proceed forthwith to prepare and make a charge and complaint against said Edward Dice for the alleged violation of the Rules of the Police Department, and of his duties as a police officer of the City and County of Denver, and that a copy thereof be served upon said Edward Dice, and a hearing held thereon by said L. E. Bratton, Manager of Safety and Excise of the City and County of Denver at a date fixed, of which the said Edward Dice shall have notice, and that the said Edward Dice be given an opportunity to present at said hearing his defense to said charges, and that at the determination thereof the said L. E. Bratton, Manager of Safety and Excise of the City and County of Denver, enter a formal order of his decision therein, which decision shall be subject to review by the Civil Service Commission of the City and County of Denver.''

The stipulated facts are as follows: That no charges were filed; no notice was given; no hearing or trial was had; that no other officer was appointed to his position for said period and that his salary for said period was not paid to any other person.

The sections of the charter of the City and County of Denver (Municipal Code 1927) relating to civil service that are pertinent here are:

. Section 224 (section 189) ''The commission shall have power to make and enforce rules, which rules shall be printed for distribution, and a copy sent to each officer, board and commission having the right to employ any person in the classified service. No rule shall become effective until ten days after publication in the official newspaper.''

Section 225 (section 190) ''The rules shall provide for a classification of all employments in the public service, as specified herein, other than day laborers and unskilled

workmen; open and competitive examinations as to fitness; an eligible list from which vacancies shall be filled; a period of probation before employment is made permanent; promotion on basis of merit, experience and record.''

Section 238 (section 204) ''All persons, at the time of the adoption of this charter, occupying positions affected by the provisions of this article, shall retain their positions until discharged, under the provisions hereof. Discharges from the classified service, or reduction in grade or compensation or both, may be made for any cause, not political or religious, which will promote the efficiency of the service; but only on written specification by the authority making the discharge or reduction; and the person sought to be discharged or reduced shall have notice, a copy of the specifications, and be allowed reasonable time for answering the same in writing. A copy of the specifications, notice, answer and the order of discharge or reduction shall be made a part of the record of the division of the service in which the discharge or reduction is made, and a copy shall be filed with the commission. The commission may examine into the facts, and if the person has been wrongfully discharged, may reinstate him.''

Section 224 gives power to the commission to make and enforce rules, and the commission has made rules. Rule 11 is pertinent here, and is as follows:

After incorporating charter section 204 hereinbefore set out, being a repetition of section 238 of the Municipal Code, the rule continues:

''(1)   No officer or employe in the classified service who has been appointed under these rules shall be demoted or discharged, except for cause, upon written charges.

''(2)   The person sought to be demoted or discharged shall have notice and a copy of the specifications and shall be allowed at least 5 days, from the date of notice,

for answering the charges.    Said answer must be in writing.

"(3)    The appointing officer may suspend the accused for a period not exceeding one month." (Subparagraphs 4, 5, 6, 7, 8 and 9 are omitted.)

"(10)    Nothing in this rule shall limit the power of any appointing officer to suspend any subordinate as a matter of discipline for any period not exceeding one month, but no such suspension shall be for a longer period than one month without the written consent of the commission.    Successive suspensions of the same person shall not be allowed except for separate and distinct causes for such suspension."

It is alleged in paragraph 9 of Dice's petition for writ of mandamus that the "suspension is and always will be a mark against his record while in the classified service." Respondents' answer to the alternative writ makes general denial of this paragraph.    The entire matter was submitted to the court upon a stipulation of facts and on the stipulation of facts, the matter resolved itself into one question, namely: Have the respondents the right and authority to summarily suspend an officer qualified under the civil service, without notice, written charges or specifications, and take away his pay, without affording such officer a trial or hearing of any kind?

Counsel for respondent contend that the relator had a plain, adequate and speedy remedy at law and that there is no relief which the relator can get in this proceeding that he could not get in a suit for a money judgment.    This is a strained argument.    The relator, if he is entitled to anything, is entitled to exact justice if such can be obtained.    If he has been wronged, as he claims here, his remedy is a direct correction of that wrong if it can be had.    He is not required, therefore, to be content with an inference to be drawn that he was absolved by the result of an action at law whereby he might obtain judgment for the salary due him.    Such judgment would have no place in the records of the police depart-

ment or the civil service commission. Those records would always remain the same. It is well to note the allegation the "suspension is and always will be a mark against his record while in the classified service." A mark against a record is not a mark for or favorable to his record. It is then clear that there is such a blot, by the action taken here, upon the record of Dice, that it is a permanent injury to him over and above a pecuniary loss, and is a record he is entitled to have expunged if the suspension was without authority. For this reason we hold this a proper case for mandamus. By any other mode of procedure, the full remedy would not be afforded. It would result in the failure of exact justice. Here, there is a right without any specific remedy other than mandamus and the writ should not be denied.

It is apparent that the manager of safety was in this matter acting under color of authority given him by paragraph 3 of rule 11, being, "The appointing officer may suspend the accused for a period not exceeding one month," and paragraph 10 of said rule 11, being, "Nothing in this rule shall limit the power of any appointing officer to suspend any subordinate as a matter of discipline for any period not exceeding one month, but no such suspension shall be for a longer period than one month without the written consent of the commission. Successive suspensions of the same person shall not be allowed except for separate and distinct causes for such suspension." The rule presupposes an accusation.

The determination of the validity of the rule above quoted ends this case. It is not the purpose of the civil service law that offices held under its provisions, be of a precarious tenure. In fact every intendment is directed toward the end that those enjoying office under classified civil service shall be protected from the arbitrary and capricious actions of a superior or appointing officer, and that the cause of removal may not be of religious or political nature the charter of the City and County of Denver makes special provision. The case

at bar arises under the civil service provisions for the City and County of Denver. The constitutional requirements for the state civil service are not applicable, but support the reasoning of this opinion and the contention of Dice in this case. That part of the Constitution is, "They shall be removed or disciplined only upon written charges * * * and after an opportunity to be heard." Article 12, section 13.

Counsel for the manager of safety contend that Dice was suspended for disciplinary reasons, and that such is provided for under the civil service rules, especially paragraph 3, rule 11, which gives the right to suspend for a period not to exceed thirty days.

The power to make rules and regulations is expressly granted by section 224 of the charter quoted above. Counsel for Dice, and amicus curiae, insist that this is an express limitation of what the rules shall contain, and no authority to make a rule for suspension is granted. This section is merely a mandatory direction to the effect that the rules shall contain certain provisions regardless of whatever else may be included in the rules, and is no limitation on the commission to make reasonable and necessary rules not repugnant to the charter and Constitution.

With this, we then come squarely to the only question in this case: In making the rule complained of here and under which Dice was suspended, did the commission exceed the power granted by the charter, and is the rule contrary to the Constitution and charter provisions? We think it is.

Article 20, section 3, of the Constitution says, "The police * * * shall continue * * * until they are severally discharged under such civil service regulations as shall be provided by charter."

Section 238 of the charter says, "All persons * * * shall retain their position until discharged under the provisions hereof." Then follows the provisions under

which a discharge may be effected. (See charter section herein quoted in full.)

█ It can be seen that a discharge may be had for many reasons, not political or religious, but in no event without written charges and an opportunity to answer. To "retain a position until discharged" does not mean to enjoy it occasionally or retain it intermittently. It means all it says, the full and unbroken enjoyment of that office until deprived of it by operation of law or due process. If any part of that tenure is suspended it is not full enjoyment and the officer is not "retained" until discharged.

Counsel for the manager of safety argue that the terms of patrolmen, under civil service, are not definitely fixed, and therefore the power to suspend exists unless restricted by charter. This argument is not well founded. The charter provides in section 225, inter alia, that employment is permanent after probation.

█ "The power to suspend an officer holding a fixed term depends upon authority conferred by charter or statute." "According to some decisions the power to suspend is not to be inferred from the power to remove; but others hold that the power of removal includes the power of suspension pending trial." 43 C. J. 651, section 1077.

We are inclined to accept the latter view. We will say that where there is, as here, a grant of power to remove, after answer, it is not to be construed as withholding the power to suspend, pending the hearing, and if it is thus included in the broader power and exercised in the lesser degree, it must be on and under similar restrictions. Emergencies may arise making it imperative to immediately suspend an officer during the pendency of charges to be immediately filed, unless waived by the officer accused, involving his conduct in office, which, if proven true, would justify removal. In the instant case the patrolman did not waive it; he insisted upon it, but was met with a peremptory refusal. By holding that the

action of the manager of safety herein, as a matter of discipline, was without authority, we do not wish to be understood as saying that proper discipline should not be maintained in the police department. This might be essential for the good of the department as well as the public it serves. We have undertaken to say how such discipline can be meted out that is not arbitrary and capricious and by administering punishment before some kind of determination of guilt.

The ordinary office or appointment for a fixed term must be distinguished for purposes here from office or appointment under civil service, where such have a continuing tenure and must necessarily be regulated by reasonable rules.

The suspension here involved was not incident to removal, but was exercised under the free and unrestricted pleasure of the manager of safety as he claims, for discipline. Right or wrong, who knows without a hearing? Unless determined by a hearing, the underlying reason might have been the very thing prohibited by charter, religious or political. Here the manager of safety invaded the fixed and permanent right of Dice, took three days of his official enjoyment as well as his pay for the period. It went beyond ordinary suspension. It was a finality as to pay, and the time could not be restored.

█ █ While it is true the charter does not expressly provide for hearing, such is implied. It is futile as well as idle, to require written specifications and opportunity to answer, and then deny an orderly hearing. This would be in direct contravention of the due process provision of the Constitution. No man is so high in his authority that he can override the Constitution; neither is any man so low that its protection does not reach down to him, when his rights are invaded.

█ Under the rule as written, "But no such suspension shall be for a longer period than one month without the written consent of the commission," collusion be-

tween the manager of safety and the commission could exist and an indefinite or unreasonable suspension could be made. The commission cannot exercise any power that is not expressly conferred by the power that created it, and cannot assume an enlarged power by making its own rules.

Dice, being in the classified service, had by every requirement, earned his office, first by examination, then by selection, after selection, proved satisfactory on his probationary record, and then became permanently in the service. The framers of the charter manifested an intention to protect him, as well as all other officers, against the arbitrary and capricious actions of a superior officer, and it would be a dangerous doctrine for this court to establish, and say, that the appointing officer under the civil service regulations, can at his will deprive a subordinate officer of his fixed right and property even for a moment of time, without being subject to the laws and Constitution of the land. Civil service, if it means anything, means protection in the enjoyment of earned rights thereunder, otherwise its pretensions are a mockery. It contemplates a hearing and opportunity to defend those rights before any part thereof can be taken. Therefore, the civil service commission had no authority to make such a rule of suspension as was here attempted to be enforced. Suspension with loss of pay may be the penalty for neglect of duty, or for discipline, and other causes, but *only* after a finding on proven charges and defense made, if desired.

The judgment is affirmed.

MR. JUSTICE BOUCK specially concurs.

MR. JUSTICE CAMPBELL dissents.

MR. JUSTICE BOUCK, specially concurring.

In the affirmance of the district court judgment I concur. I think, however, that the criticism of the Civil Service Commission's rule 11 is unjust. The rule neither

directly nor indirectly dispenses with a hearing on the employee's discharge or on a reduction in his grade or compensation. It does not concern itself with any penalty. It forbids an appointing officer to suspend for more than one month *unless written consent is given by the Commission.* It seems clear that the rule was aptly framed to protect, and not to weaken, the security of every police or other civil service employee in his official tenure.